UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

CIVIL ACTION NO. 07-68-JBC

TAMMY L. COUCH,                                                                                          PLAINTIFF,

V.                              MEMORANDUM OPINION AND ORDER

MICHAEL J. ASTRUE, COMMISSIONER,
SOCIAL SECURITY ADMINISTRATION,                                                          DEFENDANT.

\* \* \* \* \* \* \* \* \* \*

This matter is before the court upon cross-motions for summary judgment on the plaintiff's appeal of the Commissioner's denial of her application for Disability Insurance Benefits ("DIB") (R. 9, 10).  The court, having reviewed the record and being otherwise sufficiently advised, will grant the defendant's motion and deny the plaintiff's motion.

I.      **Overview of the Process**

Judicial review of the decision of an Administrative Law Judge ("ALJ") to deny benefits is limited to determining whether there is substantial evidence to support the denial decision and whether the Secretary properly applied relevant legal standards.  *Brainard v. Sec'y of Health & Servs.*, 889 F.2d 679, 681 (6th Cir. 1989) (citing *Richardson v. Perales*, 402 U.S. 389 (1971)).  "Substantial evidence" is "more than a scintilla of evidence, but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Cutlip v. Sec'y Health & Human Servs.,* 25 F.3d 284, 286 (6th Cir.

1994). The court does not try the case *de novo* or resolve conflicts in the evidence; it also does not decide questions of credibility. *See id.* Rather, the ALJ's decision must be affirmed if it is supported by substantial evidence, even though the court might have decided the case differently. *See Her v. Comm'r of Soc. Sec.*, 203 F. 3d 388, 389-90 (6th Cir. 1999).

The ALJ, in determining disability, conducts a five-step analysis. At Step 1, the ALJ considers whether the claimant is performing substantial gainful activity; at Step 2, the ALJ determines whether one or more of the claimant's impairments are "severe"; at Step 3, the ALJ analyzes whether the claimant's impairments, singly or in combination, meet or equal a listing in the Listing of Impairments; at Step 4, the ALJ determines whether the claimant can perform past relevant work; and finally, at Step 5 – the step at which the burden of proof shifts to the Commissioner – the ALJ determines, once it is established that the claimant cannot perform past relevant work, whether significant numbers of other jobs exist in the national economy which the claimant can perform. *See Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994); 20 C.F.R. § 404.1520.

II.   **The ALJ's Determination**

At the time of the alleged disability onset date, the plaintiff was a thirty-eight-year-old female with a general equivalency degree (GED). AR 24, 229. She alleges disability beginning on November 8, 2004, due to a variety of mental and physical impairments. AR 18. The plaintiff filed her claim for Disability Insurance

Benefits (DIB) on January 3, 2005, which was denied initially and on reconsideration. AR 18. After a hearing held on October 23, 2006, Administrative Law Judge ("ALJ") Roger L. Reynolds determined that the plaintiff did not suffer from a disability as defined by the Social Security Act. AR 18, 25.

At Step 1, the ALJ found that the plaintiff had not engaged in substantial gainful activity since the alleged onset of disability. AR 20. At Step 2, the ALJ found that the plaintiff had severe impairments of hand tremors, urinary stress incontinence, borderline intellectual functioning, exogenous obesity, and an anxiety disorder. AR 20. The ALJ then determined that the plaintiff's impairment did not meet or equal a listing in the Listing of Impairments at Step 3. AR 21.

In assessing the plaintiff's claims at Steps 4 and 5, the ALJ found that Couch had a residual functional capacity ("RFC") to perform light to sedentary work. AR 21. At Step 5, the ALJ found that the plaintiff was unable to perform any past relevant work as a factory worker, stock clerk in a department store, and crane operator. AR 24. Finally, at Step 5 the ALJ, while taking into consideration Couch's age, education, work experience, and RFC, determined that jobs exist in a significant number in the national economy that the plaintiff can perform. AR 25. The ALJ then denied the plaintiff's claims for DIB, and she appealed to the Appeals Council. AR 25, 14. Following the denial of her appeal on August 13, 2007, the plaintiff commenced this action. AR 7, R. 1.

**III.   Legal Analysis**

The plaintiff disagrees with the ALJ's application of Step 3 and Step 5 in the five-step evaluation and with his finding that she is not disabled. The plaintiff claims that the Commissioner's decision was not supported by substantial evidence because (1) the ALJ erred by finding that the plaintiff did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. pt. 404, subpt. P, Appendix 1; (2) the ALJ erroneously concluded that the plaintiff has the RFC to perform light to sedentary work; and (3) the ALJ failed to explain why he rejected the testimony of the vocational expert that did not support his ultimate conclusion. The court will consider these arguments in turn.

    **A.**    **Listing of Impairments**

In the plaintiff's memorandum in support of her motion for summary judgment, she states that "the consultative report provided uncontradicted evidence that Couch met Listing 12.05C." R. 9-2. This listing refers to impairments relating to mental retardation. The plaintiff never mentioned "mental retardation" in her memorandum, and there is no evidence that she was ever diagnosed as being mentally retarded. In a letter to the Appeals Council, the plaintiff's attorney argued that her impairments satisfy the requirements of Listing 12.04C, which deals with affective disorders. Because of this inconsistency, the court will consider both listed impairments when reviewing the ALJ's decision.

To prevail under Listing 12.05, the plaintiff must prove that her condition

meets or is medically equal to mental retardation. In describing the impairment, the Listing notes:

> Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.

20 C.F.R. pt. 404, subpt. P, app. 1, § 12.05. The plaintiff's condition must be consistent with the Listing's description of mental retardation and meet at least one of the Listing's four options for proving severity. 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00A. The plaintiff must show evidence that she meets all elements of the listed impairment. *See Dorton v. Heckler,* 789 F.2d 363, 367 (6th Cir. 1986) (Almost establishing disability is not enough.); *Hale v. Sec'y of Health and Human Services,* 816 F.2d 1078 (6th Cir. 1987) ("lack of evidence indicating the existence of all the requirements of [an appendix listing] provides substantial evidence to support the Secretary's finding that the claimant did not meet the Listing").

Couch asserts that option C is applicable to her claim. This option requires: "A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function." 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.05. The plaintiff has failed to show that her impairments meet all the elements of Listing 12.05C. She has never been diagnosed with mental retardation. Even though her full-scale IQ was 67 on the WAIS-III test, AR 133, Couch presented no evidence to suggest that this deficiency "initially manifested during the developmental period."

5

According to the report of David Chiappone, Ph.D., the plaintiff "denied experiencing any developmental delays." AR 131. While Couch had difficulty "learning academics" and was held back in the first grade, she later obtained her GED. AR 131. Thus, the plaintiff does not meet the requirements for Listing 12.05C.

Next, the court must determine whether Couch's condition meets or medically equals the requirements of the "affective disorders" listing, Listing 12.04. "Affective disorders" are "[c]haracterized by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome." 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.04. "Mood refers to a prolonged emotion that colors the whole psychic life; it generally involves either depression or elation." *Id.* In addition to proving that her condition satisfies the Listing's description of "affective disorders," the plaintiff must prove that the requirements of subsections A and B or subsection C have been met. *Id.*

Couch contends that her condition satisfies subsection C of Listing 12.04, which requires:

> Medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:
>
> 1. Repeated episodes of decompensation, each of extended duration; or

>   2.  A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or
>
>   3.  Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

*Id.* In his letter to the Appeals Council, Couch's attorney argued that her condition satisfies paragraph 2 of Listing 12.04C. Therefore, the court will limit its review to that option.

The plaintiff argues that she meets the requirements for this listing because her treating physician, Ronald Koff, M.D., and the consulting psychologist, David Chiappone, Ph.D., found that she "would have a difficult time adjusting to the work place because of her anxiety and reduced stress tolerance." AR 225. Even if the plaintiff's characterization of the findings of Dr. Koff and Dr. Chiappone are correct, these findings alone are insufficient to establish an impairment under Listing 12.04C. In order to satisfy paragraph 2, the plaintiff must show that her difficulty in adjusting to the workplace would cause her to decompensate. Nothing in Dr. Koff's office notes and medical source statement and Dr. Chiappone's clinical evaluation suggests that the plaintiff's condition would worsen if she obtained employment.[1] Furthermore, two psychologists employed by a state agency

---

[1] Dr. Koff rated the plaintiff's ability to perform several work-related activities as "poor" in his medical source statement. AR 188, 189. This assessment

reviewed the plaintiff's record and found that "[e]vidence does not establish the presence of the "C" criteria."[2] AR 151, 182. The ALJ adopted the opinions of these psychologists because they "appear to be the most accurate opinions regarding the claimant's severe mental problems." AR 24. The plaintiff's condition, therefore, does not meet the requirements for Listing 12.04C.

The plaintiff's impairments are not sufficient to satisfy Listing 12.04C or Listing 12.05C. Therefore, the court finds that substantial evidence supports the the ALJ's determination that the plaintiff's condition does not meet or medically equal a listed impairment.

**B.     Residual Functional Capacity**

The plaintiff claims that, in light of the record, the ALJ erroneously found that she could perform light to sedentary work. The court must affirm the ALJ's

---

provides little insight into whether "a minimal increase in mental demands or change in the environment" would cause her to decompensate. However, Dr. Koff found that the plaintiff's ability to "[r]espond appropriately to changes in the work setting" was "fair," which means that she "can perform the activity satisfactorily some of the time." AR 188-189. Dr. Koff's finding that the plaintiff has a "fair" ability to respond to changes in the work setting contradicts her assertion that such changes would cause her to decompensate.

[2] The psychologists reviewed the plaintiff's medical records to determine whether her impairments satisfied Listings 12.02 and 12.06. While it is unclear whether they considered Listing 12.04, their findings are still relevant because the subsections "C" of Listings 12.02, 12.03, and 12.04 all contain the following provision: "[a] residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate." Neither psychologist checked the box for this option; instead, each selected the box for "[e]vidence does not establish the presence of the "C" criteria." AR 151, 182.

decision "even if there is substantial evidence in the record that would have supported an opposite conclusion, so long as substantial evidence supports the conclusion reached by the ALJ." *Jones v. Comm'r of Social Security*, 336 F.3d 469, 475 (6th Cir. 2003) (quoting *Key v. Callahan*, 109 F.3d 270, 373 (6th Cir. 1997)).  The court finds that substantial evidence supports the ALJ's finding that the plaintiff has the RFC to perform light to sedentary work.  Therefore, the court must affirm the ALJ's decision.

     Couch argues that the ALJ failed to give proper weight to the opinion of Dr. Koff, her primary care physician, in determining her RFC.  In assessing Couch, Dr. Koff determined that her ability to perform certain work-related activities was "poor," which means that she had "[n]o useful ability to function" in those activities.  AR 188.  For example, Dr. Koff found that the plaintiff's ability to "[u]nderstand and remember short, simple instructions[,]" "[s]ustain an ordinary routine without special supervision[,]" and "[i]nteract appropriately with the public" was "poor." *Id.*

     The ALJ refused to give deference to Dr. Koff's evaluation of Couch's mental status because Dr. Koff is not an expert in mental illnesses and his opinion was inconsistent with the objective evidence found in the record, which includes his own office notes.  AR 24.  As a family practice physician, Dr. Koff treated Couch's physical and mental problems.  From February 9, 2004, to September 18, 2006,

9

the plaintiff saw Dr. Koff regularly for treatment.³ AR 166, 186. The opinions of a treating physician are entitled to significant deference. *See, e.g., Wilson v. Comm'r of Social Security,* 378 F.3d 541, 544 (6th Cir. 2004). However, "they are not entitled to complete deference, and thus are not controlling if they are inconsistent with other substantial evidence or unsupported by detailed objective criteria and documentation." *Wolfe v. Social Security Administration*, 39 Fed. App'x 317, 320 (6th Cir. 2002).

The ALJ found the opinions of Dr. Chiappone and the state agency psychologists more persuasive than Dr. Koff's opinion. Because Dr. Koff is not a specialist in treating mental disorders, the opinions of the examining and non-examining psychologists provide substantial evidence to support the ALJ's decision. *See id*.; *see generally* 20 CFR 404.1527(f)(2)(i) ("State agency medical and psychological consultants . . . are highly qualified physicians and psychologists who are also experts in Social Security disability evaluation.").

Dr. Koff's opinion also is inconsistent with objective evidence found in the record. In particular, Dr. Koff found that the plaintiff's ability to "[u]nderstand and remember short, simple instructions" was "poor."⁴ AR 188. The plaintiff testified

---

³The plaintiff also argues that the ALJ committed an error by finding that she did not receive ongoing mental health therapy for her psychological problems. The court agrees and finds that the Dr. Koff provided mental health therapy for the plaintiff. Nevertheless, the ALJ's finding is harmless because other substantial evidence exists to support the ALJ finding that Couch has the RFC to perform light to sedentary work.

⁴ A "poor" rating denotes "[n]o useful ability to function." AR 188.

that she does the laundry and some chores around the house, gets on the computer, and goes to her mother's house for breakfast.  AR 239-243.  Occasionally, she goes to Wal-mart and can drive comfortably for approximately half an hour.  AR 239, 243.  After examining the plaintiff, Dr. Chiappone determined that she can "understand simple one and two step job instructions" and is "mildly impaired" in her ability to remember those instructions. AR 134.  Dr. Koff's assessment of the plaintiff's abilities is inconsistent with the report of Dr. Chiappone and the plaintiff's own testimony.  This further substantiates the ALJ's decision to give little weight to Dr. Koff's opinion.

The ALJ found that Dr. Koff's office notes were inconsistent with his assessment of the plaintiff's mental abilities.  AR 24.  On June 9, 2006, Dr. Koff noted that the plaintiff was "somewhat stable" and her affect was stable.  AR 187.  Prior to that, indicated that her affect was "fairly good."  AR 156.  He also wrote that she was "doing 'fair'" and was "fairly well oriented" on February 28, 2005.  AR 161.  The stability of the plaintiff's condition, along with her daily activities and Dr. Chiappone's contrary opinion, indicates that her impairments were not as limiting as Dr. Koff claimed.  Thus, Dr. Koff's medical opinion is inconsistent with objective evidence in the record and is not entitled to deference.

The ALJ also rejected Dr. Koff's determination that Couch is "unable to engage in any employment."  AR 23.  Dr. Koff noted in Couch's medical chart that she was "most likely permanently disabled," AR 161, and "absolutely unable to

11

work," AR 159. Only the treating physician's medical opinions have controlling weight. Medical opinions "are statements from physicians . . . that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [her] symptoms, diagnosis and prognosis, what [she] can still do despite impairments(s), and [her] physical or mental restrictions." 20 C.F.R. §404.1527(a)(2). Other issues are reserved to the Commissioner, such as the decision of whether the plaintiff meets the statutory definition of disability. Thus, a statement by a medical source that a claimant is "disabled" or "unable to work" does not mean that the ALJ must determine the claimant is disabled. 20 C.F.R. §404.1527(e)(1). The ALJ, therefore, did not err by refusing to give deference to Dr. Koff's opinion that the plaintiff is disabled and unable to work.

Appropriate weight was afforded to limitations on the plaintiff's physical ability to use her hands for fine motor manipulations and to use her feet for foot pedals due to her tremors. AR 24. The RFC assessment incorporates these restrictions as well as the limitations caused by her mental impairments.[5] After considering the opinions of the examining and non-examining psychologists as well as the plaintiff's treating and consulting physicians, the ALJ concluded that the

---

[5] Because of the plaintiff's mental status, she can perform only simple one-to-two step instructions. AR 24. Her anxiety disorder "interferes with her ability to maintain attention and concentration, interact frequently with others, and tolerate stress." *Id.*

12

plaintiff could "engage in light to sedentary work activity."[6] This RFC determination is consistent with the remainder of the evidence of record. The court finds that the ALJ properly weighed Dr. Koff's opinion and used it in his assessment of the plaintiff's RFC. The court further finds that the ALJ's finding that the plaintiff could perform light to sedentary work based on her RFC was supported by substantial evidence.

### C.    Vocational Expert's Testimony

The plaintiff argues that the ALJ failed to explain why he rejected certain testimony by the vocational expert that did not support the ALJ's ultimate conclusion. At the hearing, the vocational expert ("VE") testified in response to a series of hypothetical questions posed by the ALJ. AR 244-248. In one such question, the ALJ asked whether any jobs exist that could be performed by an individual with the following limitations:

> If we assume a person of Ms. Couch's age, education and experience with the capacity to perform at either a light or a sedentary exertional level with no use of the hands for fine motor manipulation, no use of, no operation of foot pedal controls. Further requires entry level work with simple one, two, three-step procedures,

---

[6]"Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. 404.1567(b). "Sedentary work involves lifting no more than 10 pounds at a time and occasional lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves mostly sitting, a certain amount of walking and standing is often necessary in carrying out job duties." 20 C.F.R. 404.1567(a).

> no frequent changes in work routines, no requirement for
> detailed or complex problem solving, independent
> planning or the setting of goals. No fast paced assembly
> lines or rigid work schedules with – should work primarily
> with objects as opposed to people with only occasional
> interaction with the general public, coworkers or
> supervisors.

AR 245-246. The VE then testified about two types of jobs that could be performed by someone with limitations similar to those raised in the question. AR 246-247.

Subsequently, the ALJ added the following limitations to the hypothetical question:

> [N]o useful ability to understand, remember or perform
> short, simple instructions or detailed instructions, sustain
> an ordinary routine without special supervision, make
> simple work related decisions, complete a work, normal
> workday or work week, interact appropriately with the
> general public, travel in unfamiliar places or set realistic
> goals . . . .

AR 247. The VE opined that, with these additional limitations, there would be no jobs that the individual could perform. AR 247.

After the ALJ questioned the VE, the plaintiff's attorney asked whether the plaintiff could perform any of the jobs that the VE mentioned in response to the ALJ's question if the plaintiff had the following limitations:

> She's moderately impaired in her ability to maintain
> concentration and attention. Her anxiety would interfere
> with sustaining concentration and attention over time.
> She is moderately to severely impaired in her ability to
> carry out and persist over time due to anxiety. She's
> moderately impaired in her ability to relate to coworkers,

14

> supervisors and the public. Okay, she is moderately to severely, she has moderately to severely reduced stress tolerance, she's not capable of managing her funds at this point in time, it's the point of the exam.

AR 248-249.  The VE responded by stating:

> I think with the moderate level this person could do the work that I've indicated before. But I think there's a factor in there about the inability to maintain attention and concentration for sustained periods over a stated amount of time . . . and I would say with the other moderate to severe limitations that were noted would preclude work activity.

AR 249.

      The plaintiff argues that the VE's response to the attorney's question does not support the ALJ's conclusion and that the ALJ erred by failing to explain why he rejected that portion of the VE's testimony.  The court finds that the VE's answer to the plaintiff's question is ambiguous.  In his question, the attorney stated that the plaintiff's ability to maintain attention and concentration was "moderately impaired."  While the VE said "I think with the moderate level this person could do the work that I've indicated before[,]" it is unclear whether his use of the phrase "moderate level" referred to the plaintiff's ability to maintain attention and concentration or whether it referred to some other impairment that was mentioned.  Also, the VE's use of the word "inability" is inconsistent with the limitations listed in the attorney's question.  Upon reviewing the transcript, the court cannot determine whether the VE's use of "inability" simply was poor word choice or whether he was creating a new hypothetical question with more severe

impairments.

The ALJ could have interpreted the VE's testimony to mean that the plaintiff was not precluded from work activity since her ability to maintain concentration and attention was at "the moderate level." Using that interpretation, the VE's testimony would not be inconsistent with the ALJ's finding that the plaintiff "has been capable of making a successful adjustment to other work that exists in significant numbers in the national economy," AR 25. If the ALJ made such an interpretation, he would have no reason to explain it in his decision because the testimony would not be contradictory to his final conclusion. Furthermore, because no evidence exists in the record to support a finding that the plaintiff has an "inability" to maintain concentration and attention, it is likely that the ALJ discounted the testimony that an "inability to maintain concentration and attention," along with the other limitations, "would preclude work activity."[7] AR 249. Thus, the court finds that substantial evidence exists to support the ALJ's finding that a significant number of jobs exist in the national economy that the plaintiff could perform.

## IV. Conclusion

Accordingly,

---

[7] None of the opinions by the physicians and psychologists found the plaintiff unable "to maintain attention and concentration for sustained periods over a stated amount of time," AR 249. In addition, the ALJ merely found that the plaintiff's anxiety disorder "interferes with her ability to maintain attention and concentration, interact frequently with others, and tolerate stress," AR 24, and he did not find that it resulted in an "inability" to do any of those activities.

**IT IS ORDERED** that the defendant's motion for summary judgment (R. 10) is **GRANTED**.

**IT IS FURTHER ORDERED** that the plaintiff's motion for summary judgment (R. 9) is **DENIED**.

Signed on  March 22, 2009

*Jennifer B. Coffman*
JENNIFER B. COFFMAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY